Opinion for the Court filed by Circuit Judge BROWN.
Opinion concurring in the judgment filed by Circuit Judge KAVANAUGH.
Opinion dissenting in part filed by Circuit Judge HENDERSON.
BROWN, Circuit Judge:
James Stephens and Richard Mahoney (collectively “Plaintiffs”) are retired U.S. Airways pilots. Each received pensions from the U.S. Airways pension plan (“the Plan”). And each opted to receive his pension in a single lump sum rather than as an annuity. The Plan paid those lump sums 45 days later than Plaintiffs would have received their first checks had they chosen the annuity option. Plaintiffs sued U.S. Airways, claiming the Plan owed them interest for its 45-day delay. The district court disagreed. We now reverse in part and affirm in part, remanding for further consideration consistent with this opinion.
I
James Stephens and Richard Mahoney retired from their jobs as U.S. Airways pilots in 1996 and 1999, respectively. Both *439 pilots qualified for a pension under the U.S. Airways pension plan. The Plan’s default pension was an annuity, to be paid in monthly installments. But the Plan also allowed a retiree to receive his pension as a single lump sum payment actuarially equivalent to the projected value of all annuity payments. Plaintiffs chose to receive their pensions as lump sums.
The Plan provided that annuity payments would begin on the first day of the month after the pilot retired (and retirement was mandatory at age 60). If the retiring pilot elected the lump sum option, however, the Plan did not actually pay that lump sum until 45 days after the first day of the month after the pilot retired. In other words, the Plan paid lump sum pensions 45 days later than Plaintiffs would have received their first payments had they selected the annuity option. U.S. Airways claimed this delay was administratively necessary because of additional calculations and precautions it takes when issuing lump sums. Important to the present dispute, the delayed lump sum payments did not include any interest for the 45 days that elapsed between the annuity start date and the date lump sum recipients actually received their payments.
Stephens and Mahoney each received their lump sum pensions 45 days after their annuity start date. Stephens received $488,477.22. Mahoney received $672,162.79. Applying the 6.25% interest rate suggested by Plaintiffs’ expert, Stephens should have received $3,665.06 in interest on his lump sum payment for the 45-day delay, and Mahoney should have received $5,043.25 in interest on his payment.
In 2000, Stephens and Mahoney sued U.S. Airways for the interest on the 45 day delay. According to Plaintiffs, U.S. Airways’ refusal to pay interest violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (“ERISA”), which requires the Plan’s lump sum payments to be the “actuarial equivalent” of the Plan’s annuity payments. 29 U.S.C. § 1054(c)(3). Plaintiffs separately alleged that the terms of the Plan required U.S. Airways to pay lump sums on the annuity start date.
Plaintiffs initially sued U.S. Airways in the U.S. District Court for the Northern District of Ohio. In 2003, the Plan was terminated due to U.S. Airways’ bankruptcy, and the Pension Benefit Guaranty Corporation (“PBGC”) became the Plan’s trustee. See id. § 1342. In 2007, the case was therefore transferred to the U.S. District Court for the District of Columbia.
In two decisions — the first on a motion to dismiss and the second on a motion for summary judgment — the district court rejected all of plaintiffs’ claims. We review those decisions de novo. See Winder v. Erste, 566 F.3d 209, 213 (D.C.Cir.2009).
II
Plaintiffs claim the lump-sum payments they received were worth less than annuities they could have received under the Plan, and therefore violated the actuarial equivalence requirement of § 1054(c)(3). As they see it, U.S. Airways calculated each lump-sum payment to be worth as much as the annuity on the annuity start date, but then withheld payment until 45 days after the annuity start date. According to Plaintiffs, U.S. Airways thus owed them the interest on their lump sums for the 45 days between the annuity start date and the lump sum payment date. On the other hand, PBGC argues it does not matter whether Plaintiffs actually received their lump sum payments on the annuity start date so long as the Plan accurately calculated lump sums that were equivalent *440 to the annuity at the time they were calculated.
ERISA establishes minimum standards for private pension plans. If a plan allows retirees to select a lump-sum payment in lieu of an annuity — the lump sum payment “shall be the actuarial equivalent” of the annual benefit. 29 U.S.C. § 1054(c)(3); see also Esden v. Bank of Boston, 229 F.3d 154, 163 (2d Cir.2000) (noting that ERISA requires lump sum payments to “be worth at least as much as that annuity”). Although ERISA does not further define actuarial equivalence, we assume Congress intended that term of art to have its established meaning. See McDermott Int’l, Inc. v. Wilander, 498 U.S. 337, 342, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). Two modes of payment are actuarially equivalent when them present values are equal under a given set of actuarial assumptions. See Jeff L. Schwartzmann & Ralph Garfield, Education & Examination Comm, of the Society of Actuaries, Actuarially Equivalent Benefits 1, EA1-24-91 (1991), available at http://unow.soa.org/files/pdf/edvr2009-fall-eal-02-sn.pdf. One such assumption is that payment begins on the annuity start date.
Actuarial equivalence prohibits a lump-sum payment that does not include the full value of the benefits a retiree would otherwise receive if he were to receive his pension in the form of an annuity. See Contilli v. Local 705 Int’l Bhd. of Teamsters Pension Fund, 559 F.3d 720, 722 (7th Cir.2009) (concluding a plan’s lump-sum payment violated § 1054(c)(3) because it failed to adjust for post-retirement, pre-application benefits); Miller v. Xerox Corp. Retirement Income Guarantee Plan, 464 F.3d 871, 874 (9th Cir.2006) (same for failure to adjust for previous distribution offsets). But § 1054(c) does not address whether (or to what extent) interest is owed when an actuarially equivalent pension is paid late. By comparison, § 1054(e)(3) requires a defined benefit plan to repay distributions that improperly reduce employee service credit with “interest at the rate determined for purposes of subsection (c)(2)(C).” 29 U.S.C. § 1054(e)(3). Because there is no dispute U.S. Airways accurately calculated Plaintiffs’ lump sums to be the “actuarial equivalent” of the annuity option as of the annuity start date, the lump sum payment does not violate § 1054(c)(3).
But a pension plan could not satisfy ERISA by correctly calculating an actuarially equivalent lump sum, then delaying payment of that sum indefinitely. To this end, an Internal Revenue Service (IRS) regulation provides that “[a] payment shall not be considered to occur after the annuity starting date merely because actual payment is reasonably delayed for calculation of the benefit amount if all payments are actually made.” 26 C.F.R. § 1.401(a)-20 (Question & Answer 10(b)(3)); cf. Rose v. Long Island R.R. Pension Plan, 828 F.2d 910, 918 (2d Cir.1987) (noting the IRS is “one of the agencies charged with administering ERISA”). By distinguishing the annuity starting date from the date of actual payment, see id. (Question & Answer 10(b)(2)) (“The annuity starting date is the first date for which an amount is paid, not the actual date of payment.”), section 1.401(a)-20 bolsters our conclusion that U.S. Airways’ late payment of Plaintiffs’ lump sums does not violate § 1054(c)(3). Nevertheless, the IRS regulation permits only “reasonable delays” in payment.
The remaining question is whether U.S. Air’s 45-day delay was reasonable. It was not. According to an analysis U.S. Air conducted during the 1990s, calculation of a lump sum payment took at most 21 business days: 7 to 10 business days to complete data checks and benefit calcula *441 tions, 2 to 3 business days to review the calculations and check for qualified domestic relations, 3 to 5 business days to transmit a check, and 3 business days to review the check. Twenty-one business days corresponds to approximately one calendar month. Aside from restating the process required to calculate lump sum payments, PBGC makes no argument explaining why Plaintiffs’ lump sums were additionally delayed. In the absence of any contrary evidence, U.S. Air’s 45-day delay appears unrelated to the administrative calculation of Plaintiffs’ lump sum benefits. And, because the delay does not correspond to administrative necessity, it is not “reasonable.”[1] See 26 C.F.R. § 1.401(a)-20 (Question & Answer 10(b)(3)). Plaintiffs’ expert evidence that 45 days is outside of the industry norm bolsters this conclusion. He said that “in practice” pension plans deem delays of 30 days or less — not 45 days — as “reasonable.”
The Dissent argues remanding this case “may well open the courthouse doors to litigation over de minimis amounts of interest accrued during a few weeks or even days.” Diss. Op. at 445. But again, future plaintiffs may recover only interest when lump-sum payments are unreasonably delayed. Plan administrators may demonstrate in any given case a delay is reasonable because it relates to the administrative calculation of lump sum benefits — a task, undoubtedly, made more difficult the longer the delay. In this way, the probability of litigation is correlated with the length of delay. Settlement is likely when delays are lengthy and difficult to tie to administrative necessity; litigation is unlikely when delays are small and any potential recovery may not cover the costs of litigation. Thus, the flood the Dissent fears may amount to a mere trickle. And to the extent the courthouse doors are open to suits concerning sizable and unreasonable delays, they should be.
In sum, Plaintiffs’ lump sums were the “actuarial equivalent” of the annuity option under the Plan at the time of the annuity start date. Because U.S. Air unreasonably delayed payment, however, Plaintiffs are entitled to interest.
Ill
Plaintiffs also argue they are entitled to attorney’s fees. The default “American rule” is that the prevailing party does not receive attorney’s fees. To receive attorney’s fees, Plaintiffs must identify some circumstance that overcomes that default rule. See Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 247, 257-60, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). ERISA provides for attorney’s fees in certain actions against private plan administrators, see 29 U.S.C. § 1303(f)(3), but the statute does not authorize attorney’s fees for actions against the PBGC, such as this case. Plaintiffs cite 28 U.S.C. § 2412(b) as an authorization for attorney’s fees. Section 2412(b) allows fees against the Government “to the same extent that any other party would be liable ... under the terms of any statute which specifically provides for such an award.” Here, however, plaintiffs are suing under 29 U.S.C. § 1303(f), and no party other than the Government can be liable under *442 that statute, because 1303(f) provides a cause of action only against the PBGC. Section 2412(b) thus does not authorize attorney’s fees in this case.
IV
We reverse the judgment of the District Court with respect to Plaintiffs’ actuarial equivalence claim. The amount of Plaintiffs’ lump sum benefit was equal to the actuarial present value of the annuity payments Plaintiffs would have received under the Plan’s default payment option. Even so, U.S. Air’s 45-day delay in paying Plaintiffs was unrelated to the calculation of Plaintiffs’ benefits, and therefore not reasonable under existing IRS regulations. We therefore remand to the district court to calculate the appropriate amounts due Plaintiffs. In addition, we affirm the judgment of the district court that Plaintiffs are not entitled to attorney’s fees.

So ordered.

. The Dissent argues I “omit one important detail,” namely, that "the pension plan administrator has to know the pilot’s 'Final Average Earnings.' ” Diss. Op. at 445. But the Dissent’s conclusion this calculation potentially takes 18 days is a red herring. That the paycheck pilots receive on the 18th of every month "reflects actual earnings for the month” says nothing of how long it took the Plan to calculate those earnings. Moreover, given pilots’ mandatory retirement on their 60th birthday, the Plan has notice of when a pilot will retire and can plan accordingly.